F. G. REEVES, *Appellant,* v. S. E. ARMSTRONG' AND CARLUS STOKES, AND J. A. J. HATHAWAY AS GUARDIAN *ad Litem* OF CARLUS STOKES, *Appellees.*

### Opinion filed March 6, 1918.

In a chancery cause a petition for rehearing duly presented to the Chancellor operates to suspend the decree under the provisions of Section 1904 of the General Statutes of Florida, 1906.

Appeal from Circuit Court for Holmes County, D. J. Jones, Judge.

Decree affirmed.

*L. J. Reeves* and *Blount* & *Blount* & *Carter,* for Appellant;

*W. H. Price,* for Appellees.

ELLIS, J.—From a decree denying a prayer for partition of certain lands in Holmes County and dismissing the bill of complaint, this appeal was taken by the complainant below.

The facts seem to be that in 1910 W. W. Davis who owned 120 acres of land in Section 8, T. 5 N. R. 14 W. in Holmes County, Florida, died leaving surviving him his wife M. H. Davis and nine children, as follows: V. W. Davis, Joe Davis, W. C. Davis, Ida Boswell, Thomas E. Davis, Lilla Brown, Pelar McEachin, Mae McKithern and Sallie Williams. Sallie Williams had two children, Crotia Williams and Carlus Stokes, and then died.

S. E. Armstrong held a judgment against V. W. Davis under which his interest in the land was sold and Arm-

strong became the purchaser.   In June, 1913, Armstrong
brought his bill in the Circuit Court for Holmes County
against M. H. Davis, the widow, and W. C. Davis, Joe
Davis, Tom Davis, Ida Boswell, Lilla Brown, Pelar Mc-
Eachin, May McKithern and Crotia Williams, for parti-
tion of the land. - All of these defendants were alleged to
be over twenty-one years of age except Tom Davis and
Crotia Williams.

In October, 1913, an amended bill of complaint was
filed in which Armstrong, M. H. Davis, Joe Davis, Lilla
Brown, Pelar McEachin, Mae McKithern, and Tommy
Davis, Crotia Williams and Carlus Stokes by their next
friend and guardian M. H. Davis appeared as complain-
ants, and W. C. Davis and Ida Boswell were defendants.
The bill prayed for partition of the land. W. C. Davis
and Ida Boswell answered. ' The case was heard on bill
nad answer, and the chancellor decreed that the widow
of W. W. Davis and the children each had a tenth inter-
est, and the grand-children Crotia Williams and
Carlus Stokes each held a one-twentieth in-
terest, and that Armstrong who had succeeded to the
interest of V. W. Davis had a tenth interest· Commis-
sioners were appointed to divide the land.   The Commis-
sioners reported that the land could not be divided
equally between the parties and the court decreed that the
land be sold at public sale to the highest bidder for cash,
and that the proceeds of the sale be disposed of according
to law.   The sale was made.   S. E. Armstrong became
the purchaser.   The sale was confirmed by decree of the
Chancellor January, 1914, and a deed to the land was
ordered to be made to Armstrong.

In September, 1914, Mae McKithern, Pelar McEachin,
Joe Davis, V. W. Davis, Lilla Brown, and M. H. Davis
in her own right and as guardian and next friend of

Thomas E. Davis, Crotia Williams, and Carlus Stokes brought their bill against S. E. Armstrong, B. W. Dalton, W. C. Davis and Ida Boswell and her husband G. T. Boswell. The bill alleged that Armstrong had conveyed the land to Dalton who was cutting the timber and removing it. It set out all the proceedings above referred to for a partition of the land and alleged that M. H. Davis, the widow, had never elected to take a child's part in the land, that V. W. Davis' interest at the time of the sale under execution to Armstrong was not a tenth interest, that the execution sale was illegal, that the sale under the partition proceeding was made without jurisdiction having been obtained by the court over the complainants or the minor children. Other allegations were made, but it is unnecessary to repeat them. The bill prayed that an injunction be granted restraining Dalton from cutting the timber on the land, that the deed to him from Armstrong be declared to be void as well as the deed from the Commissioners to Armstrong and the decree of the Chancellor in the partition proceedings as a cloud upon complainant's title. L. J. Reeves and W. D. Howe were solicitors for complainants in that suit.

On June 22nd, 1915, the Chancellor upon final hearing granted a permanent injunction against Dalton restraining him from cutting the timber from the land, and decreed the deeds from the Commissioners to Armstrong and from the latter to Dalton to be set aside and cancelled. On the 3rd day of September, 1915, the Chancellor rendered a decree vacating and annulling the final decree of June 22, 1915, and ordered that the cause be resubmitted for final hearing. This decree recited that a petition for rehearing had been filed in the cause on July 13, 1915.

On September 14, 1914, L. J. Reeves and W. D. Howe

obtained from M. H. Davis, the widow, Joe Davis and his wife; V. W. Davis and wife; W. C. Davis and wife; Thomas Davis; Ida Boswell and husband; Pelar Mc-Eachin; Mae McKithern and husband; Crotia Williams and Lilla Brown and husband a deed conveying an undivided three-eighths interest to Reeves and an undivided one-eighth interest to Howe in the land.

On July 19, 1915, Pelar McEachin conveyed all her interest in the land to Reeves, and on the same day Crotia Williams executed a deed to him purporting to convey all her interest. On July 22, 1915, Lilla Brown conveyed all her interest to him, and on the 24th of the same month Joe Davis and Mae McKithern conveyed their interests.

On July 21, 1915, L. J. Reeves and W. D. Howe conveyed to F. G. Reeves their interest in the land.

The bill in this case was filed August 16, 1915, by F. G. Reeves against S. E. Armstrong and Carlus Stokes. The latter is alleged to be an infant. It is alleged that the complainant is the owner of an eight-ninths undivided interest; that Armstrong owns an undivided two-twenty-sevenths interest and Carlus Stokes an undivided one-twenty-seventh interest in the land.

A guardian *ad litem* was appointed for Carlus Stokes. The guardian answered that he knew of no defense that he could make for the minor, but prayed strict proof of the allegations of the bill.

Armstrong answered denying that F. G. Reeves owned any interest in the land; that the property had been sold under a decree of partition made by the Circuit Court for Holmes County; that he had become the purchaser, and that the sale was duly confirmed. That he afterwards conveyed to B. W. Dalton, who reconveyed to Armstrong, and the latter was the legal owner of the land.

On October 9, 1915, replication was filed to the

answer of Armstrong, and a Special Master was appointed to take testimony.

On October 28, 1915, the Special Master filed his report. This report consists of the testimony of L. J. Reeves and C. M. Cox for the complainant, original patent from the United States to W. W. Davis, copies of the deeds above referred to from M. H. Davis and others to Reeves and Howe, and from Pelar McEachin and others to Reeves, to which reference has been made; deed from Reeves and Howe to F. G. Reeves; copies of the bill and exhibits in the suit of Mae McKithern et al. v. S. E. Armstrong et al., showing the decree of partition in the suit of Armstrong et al., v. W. C. Davis et al., the sale of the land and deed to Armstrong, and the final decree setting aside that deed and the one from Armstrong to Dalton; the proceedings in the rehearing and the decree setting aside the last decree in which the deeds to Armstrong and from him to Dalton were annulled and ordering the cause to be resubmitted on final hearing at such time as the parties may designate. This last decree was made September 3, 1915.

On February 4, 1916, the complainant filed notice of bringing the case on for final hearing upon the bill, answer, replication and testimony.

The record contains a report of the Special Master which was made January 31, 1916, showing certain documents offered in evidence by the defendant as follows: Commissioners deed to Armstrong; deed of Armstrong to Dalton; deed of Dalton back to Armstrong, and the joint and several answer of Armstrong and Dalton in the suit of McKithern et al. v. Armstrong et al.

It seems that on August 28, 1916, about seven months after the last report of the Special Master, the defendant Armstrong in the instant case applied to the court for

leave to file "as testimony on his behalf" certified copies of the documents consisting of petitions, orders, bonds, affidavit and lis pendens notice in the McKithern-Armstrong case. These documents seem from the record not to have been included in the Special Master's report of seven months before.

The court by order dated the same date of the application granted it. And on the 9th day of September, 1916, attorney L. J. Reeves for the complainant F. G. Reeves moved the court to "strike the certified" copies of the documents mentioned, which motion was denied on September 15, 1916.

On the 18th day of September, 1916, the court rendered its final decree denying the prayer for partition of the land and dismissing the bill of complaint. From this decree F. G. Reeves appealed, and assigned four errors, which are as follows:

"1. The court erred in making the order of the 28th day of August, A. D. 1916, without notice admitting certified copies specified in said order to be admitted in evidence.

"2. The court erred in denying the motion of the complainant to strike said testimony.

"3. The court erred in making said order admitting the said testimony after the testimony had all been taken and after the cause had been set down for final hearing for more than four months.

"4. The court erred in making the final decree adjudging the equities to be with the respondents."

It is contended for appellant that as the three months provided by the statute for taking testimony after a cause in equity is at issue had expired the Chancellor should not have allowed the certified copies of the proceedings in the rehearing of the McKithern-Armstrong case to be

received in evidence. · That if those documents had been excluded there would have remained only the final decree in the McKithern-Armstrong case which left the title in Armstrong, but as the complainant F. G· Reeves had acquired the title six weeks before under the first decree in the McKithern-Armstrong case which annulled the Commissioners' deed to Armstrong and left the title in the Davis heirs, Reeves could not be affected by the second decree which annulled and vacated the first. That this is true because even if F. G. Reeves' grantor L. J. Reeves took title from the Davis heirs with notice of the petition for rehearing, F. G. Reeves was an innocent purchaser and took a good title from L. J. Reeves unaffected by the rehearing proceedings.

The petition for rehearing in the McKithern-Armstrong case was presented to the Judge on July 10th, 1915, nine days before the first deed was obtained by L. J. Reeves from one of the Davis heirs, and eighteen days after the first decree in the McKithern-Armstrong case. A copy of the order requiring the complainants in that case to show cause why the petition should not be granted, was served upon them on July 15th, 1915, four days before the first deed was made to L. J. Reeves. Within thirty days after filing the petition for a rehearing the petitioner under order of the court gave the bond required by the statute to be given in such cases. Section 1904 General Statutes, 1906, Florida Compiled Laws, 1914·

In the case of Gasque v. Ball, 71 Fla. 257, 71 South. Rep. 329, this court in discussing incidentally the question of whether a petition for rehearing duly presented to the Chancellor operated to suspend the decree, expressed itself as being of the opinion that it did. We have considered the question again in the light of the opinion of appellant's counsel who hold to a contrary view, but we are

unable to perceive any reason for receding from the views expressed in the Gasque-Ball case.

The stay of execution upon a money judgment is not analogous. In such case the judgment is not affected; it is the process which is stayed. But in case of a decree such as the one rendered first in the McKithern case, of what meaning is the statute unless it contemplates that the order adjudging the deeds to be void becomes inoperative until the petition is heard and determined. What proceedings are taken under such a decree? It is self executing. Unless the legislature intended some substantial results to flow from a petition duly presented for a rehearing its work is productive of no benefit to the cause of justice.

In the view we have of the case L. J. Reeves acquired no title whatever to the land from those heirs of Davis from whom he obtained deeds, and obtaining no title he conveyed none to F. G. Reeves, the complainant.

The decree of the Chancellor we think was correct, and it is hereby affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J. concur.