HOLLYWOOD, INC., a Florida corporation, v. ANDREW CLARK and HILMA CLARK, his wife.

15 So. (2nd) 175                                                                June Term, 1943
September 24, 1943                                                              Division B

T. D. Ellis, Jr., and Stanley M. Beckerman, for appellant.
Miller & Fitzsimmons, for appellees.

BROWN, J.:

This is an appeal from an order granting appellees' petition for a rehearing and modifying the chancellor's former decree, which was in favor of the appellant and quieted appellant's title in and to a certain lot in Hollywood, Florida. This decree in favor of the appellant, plaintiff in the court below, was by such order on rehearing modified so as to require the plaintiff to reimburse the defendants, appellees here, for the amounts paid out by them in taxes over a period of years during which period defendants considered that they held a good title to the property under an unrecorded warranty deed executed by the Home seekers Realty Company. In other respects the former decree was left undisturbed. The plaintiff's appeal was limited to the said order granting a rehearing and modifying the final decree as above stated. Appellees, defendants in the court below, in whose interest the modification of the former decree was made, took no appeal therefrom, but on the appeal to this Court taken by Hollywood, Inc., they have filed cross assignments of error attacking the original final decree on its merits, that is, upon various grounds based mainly upon the defenses set up in defendant's several answers and the evidence proferred in support thereof, which answers appellees contend were erroneously dismissed and the evidence proferred in support thereof erroneously excluded.

The factual background of this case is briefly as follows: In February 1924, Appellees Andrew Clark and Hilma Clark, his wife, who were nonresidents of the State of Florida, entered into a contract with the Home Seekers Realty Company, a Florida corporation, to purchase a lot in the "Hollywood Beach First Addition," situated in Broward County, Florida, the consideration being $3025.00, which they paid in due course and the corporation executed and delivered to them its warranty deed on July 17, 1925. They never recorded the deed until some years after the appellant, Hollywood, Inc., acquired a deed to the property under the following circumstances. The Highway Construction Company of Ohio, Inc.,

secured a judgment against said Home Seekers Realty Company in April, 1929, in a large amount; execution thereon was issued in May of the same year and levied by the sheriff on some hundreds of lots in Hollywood, including the vacant lot in question, all of which were bought in by the Highway Construction Company at execution sale, and sheriff's deed was executed to said purchaser and recorded on December 1, 1930. In February of 1931, the Highway Construction Company, for a valuable consideration, conveyed the property to the appellant, Hollywood, Inc., and said deed was recorded three days later. The appellees did not record their deed until November 7, 1939; so their deed was withheld from the public records for a period of some fourteen years and three months. This suit was filed by the appellant, Hollywood, Inc., in April of 1941 to quiet its title against the cloud cast thereupon by the recording of the old deed from the Home Seekers Realty Company to appellees. The defendants filed a motion to dismiss the bill which was denied and thereafter filed an answer and two amended answers, all of which the court held to be insufficient and ordered that the bill be taken as confessed by the defendants. Testimony and exhibits were adduced before the court and the final decree granting the prayer of plaintiff's bill was rendered on February 2, 1942. Defendants' petition for rehearing was filed February 21, 1942 and the order granting a rehearing and modifying the said final decree was entered on June 26, 1942.

In this order the chancellor stated that he had heard oral arguments upon the said petition for rehearing and had requested briefs upon one question presented by counsel. The court also stated in its order that, with one exception, the petition presented no questions which had not been considered by the court on final hearing, and that the exception referred to was a contention of counsel for the defendants, not made on the original hearing, that plaintiffs should be required to pay to the defendants the taxes which they had paid over a period of years on the land in controversy. The chancellor also stated that no Florida case on this point has been cited by counsel and he had found none; that the decisions of courts in other jurisdictions were in conflict, the weight of authority

perhaps being against defendants' contention. Then the chancellor in his order stated "I have given some time and study to this question and I am inclined to join the minority group. If, as plaintiff contends, and this contention was upheld by this Court, it was the owner in fee simple of the land, the duty rested upon it, when due, to pay the taxes. Not having done so, it would seem to be equitable to require this to be done. Defendants lived in a distant state. They had relied upon an unrecorded deed and in good faith had paid the taxes on land which they thought they owned. Under these circumstances they should be reimbursed for the taxes paid by them." Then follows the order of the court granting the petition for rehearing and on said rehearing, ordering, adjudging and decreeing "that the final decree entered February 2, 1942, be modified so as to require plaintiff to pay to defendants all taxes paid by them on the land involved, together with the interest at 6 per cent on each payment from the date thereof."

While the answers of the defendants, which attempted to set up several defenses, were all held insufficient by the trial court, they did allege that the defendants had paid the taxes on said lands and contained a prayer for general relief, and the defendants also proferred in evidence tax receipts showing that they had paid state, county and city taxes for the years 1924 to 1939 inclusive, and proved by cross-examination of plaintiff's witnesses that plaintiff had never paid any taxes on said land. This prayer for reimbursement for taxes paid was made one of the grounds of the petition for rehearing. Plaintiff below made no attempt to show that these defendants had not paid such taxes, and on its appeal here the error complained of is, not that defendants had not paid the taxes, but that, as a matter of law, the chancellor was in error in requiring appellant to reimburse appellees for the taxes so paid.

Before discussing the merits of this appeal, there are some questions of appellate jurisdiction and procedure which, in view of comparatively recent changes in our statutes and court Rules, call for careful consideration in order to save trouble to the bench and bar in future cases.

The original final decree was rendered and entered on February 2, 1942, and the order or decree on rehearing "modifying" the former decree by adding a new provision thereto, was rendered and recorded on June 26, 1942. Regardless of whether or not this last order be deemed a second or a final decree or a supplemental order or decree from which an appeal could be taken; and regardless of whether or not the decree of February 2, 1942, as amended on June 26, 1942 might be considered as having been brought forward by the amendatory order and combined with the latter order into one final decree, so that the date of the rendition and entry of the complete final decree would thereby be established as of June 26, 1942, the date of the last order, the fact remains that the defendants, appellees here, took no appeal or cross appeal during the sixty-day periods following February 2, 1942 or June 26, 1942, nor did they file any assignments or cross-assignments of error during such periods. But the plaintiff below did appeal within the sixty-day period required by Section 67.03 F.S. 1941 from the order of June 26th on rehearing adding to the first decree the provision above referred to, which appellant contends is the only action of the chancellor which has been brought to this Court for appellate review. Appellant did not appeal from the original decree, which was entirely in its favor, but took its appeal solely from the order of June 26, 1942, and duly filed its assignments of error and directions to the clerk on August 22, 1942. Appellees filed their cross-assignments of error, attacking only the original decree of February 2, 1942 and also additional directions to the clerk, on August 31, 1942, at which time the period for taking an appeal or cross appeal from either the decree of February 2, 1942, or that of June 26, 1942, had expired. Appellant filed its objections to said cross assignments and additional directions in the court below, but the chancellor declined to rule thereon, stating that the question presented required an interpretation of the new Supreme Court rules which he thought should more appropriately be interpreted by the Supreme Court, which Court could also take care of the matter of the additional cost of the transcript resulting from appellees' additional directions.

In the light of these facts, appellant presents the question

as to whether or not the defendants in the court below, appellees here, can achieve a direct appeal from the original final decree of February 2, 1942, or achieve a cross appeal therefrom, by merely filing cross-assignments of error in plaintiff's appeal from the order of June 26, 1942.

That inquiry suggests a preliminary question: Was the order of June 26, 1942, an appealable order? Leaving aside for the present the question as to whether the decree of February 2, 1942 and the amendatory order of June 26, 1942, together formed one final decree, we hold that the last order was an appealable order. It certainly was not a mere interlocutory or supplemental order (Koonan's Fla. Chanc. Pldg. Prac. Sections 153, 186, 187) but was a final and distinct adjudication of rights which had not been, but which could have been, adjudicated in the original decree, and was, in and of itself, as to the distinct and particular matter adjudicated therein, so final in its nature as to give it the character of a final decree. Hence it was an appealable order or decree, whether the effect was to bring the original decree up for review as a part of it, or not, and it was not necessary or appropriate for the appellant to resort to review by special certiorari under Supreme Court Rule 34. See Theo. Hirsch Co. v. Scott, 87 Fla. 336, 100 So. 157; Fullerton v. Clark, 142 Fla. 200, 194 So. 481; Berns v. Harrison, 100 Fla. 1105, 131 So. 654; Heverle v. Rasmussen, 103 Fla. 76, 139 So. 259; Dade County v. Snyder, 134 Fla. 756, 184 So. 489; McKell v. Jackson, 107 Fla. 668, 145 So. 418; 3 C.J. 518; 4 C.J.S. 184-190; 2 Am. Jur. 858-865. As was held in some of the above authorities, an interlocutory order or decree is one that is rendered "in the middle of a cause," and which does not finally determine or complete the suit, whereas a final decree is, generally speaking, one that determines the rights of the parties and disposes of the cause on its merits, leaving nothing more to be done *in the cause* as distinguished from *beyond the cause*—which latter phrase apparently refers, ordinarily at least, to such further proceedings and orders as may be necessary to enforce the decree, and which, in proper cases, may be reviewed under our Rule 34. As to finality of decrees, the general rule is stated in Alderman v.

Puritan Dairy, Inc., 145 Fla. 292, 199 So. 44; Mabson v. Christ, 96 Fla. 756, 119 So. 131, and cases cited.

We return now to appellant's question, which in effect is whether the defendants below, appellees here, can on this appeal from the order or decree of June 26, 1942, question the correctness of the court's original and presumably final decree of February 2, 1942, merely by filing cross-assignments of error in plaintiff's appeal from the said order of June 26, 1942, which latter order made no change in the original decree, but merely granted the rehearing and on the rehearing added a provision thereto favorable to appellees, and, from which latter order appellant Hollywood, Inc., took this appeal. No appeal was taken from the original decree by either party, and the cross-assignments were filed after the time for appealing therefrom had elapsed.

Appellees contend that by appealing from the amendatory order of June 26, 1942, appellant, in legal effect, also appealed from the original final decree in its favor upon the theory that the original decree and the later amendatory order on rehearing together constituted the real single and complete final decree in the case, and that therefore appellees had the right to file the cross assignments of error based on alleged errors in the original decree.

Under our practice the general rule is that a final decree does not become absolute until the court has determined the petition for rehearing, provided such petition shall have been filed within twenty days after the recording of the decree, as required by statute. Kooman, Section 161. But the filing or pendency of a petition for rehearing does not operate to *stay* the proceedings unless so ordered by the court, in accordance with the provisions of Section 71 of the 1931 Chancery Act, now 63.71 Fla. Statutes 1941. However, we have held that the filing and presentation of a petition for rehearing in a case where the final decree granted no affirmative relief, "suspended" the final decree, as there was nothing to stay and the granting of the rehearing suspended the operation and effect of the decree until the court acted on the rehearing. Dade County v. Snyder, 134 Fla. 756, 184 So. 489. A prime function of a petition for rehearing is to present to the court

some point which it overlooked or failed to consider, which renders the decree inequitable and erroneous. It is addressed to the sound discretion of the chancellor, and his rulings thereon will not be disturbed unless abuse of discretion is clearly shown. Such a petition is also available for correction of error of law apparent on the face of the record, and for obtaining the court's permission to introduce newly discovered evidence. Mann v. Etchells, 132 Fla. 409, 182 So. 198; Kooman's Fla. Chan. Prac., p. 368; Braznell v. Braznell, 140 Fla. 192, 191 So. 457. And, by way of comparison, a judgment at law does not become final and absolute until a motion for new trial, seasonably made, is disposed of. McClellan v. Wood, 78 Fla. 407, 83 So. 295; Worrell v. Ford, 90 Fla. 571, 107 So. 183; Tally v. McCain, 128 Fla. 418, 174 So. 841; but motions for new trial standing over from one term to another do not operate as a supersedeas unless so ordered by the court (4497 C.G.L. 54, 24 Fla. Statutes 1941) and if the party making the motion desires the execution of the judgment stayed or superseded, he should apply to the judge for an order to that effect. Hazen v. Smith, 101 Fla. 767, 135 So. 813.

Of course, this appellant did not appeal from the original decree, which was entirely in its favor; nor did appellees appeal from it, though it was adverse to them. Appellant's appeal is only from the order or decree on rehearing, which left the original decree standing, but "modified" it by merely adding thereto a new provision adverse to plaintiff, appellant here, and it is from this order alone that plaintiff took this appeal. What then is the "subject matter" of this appeal? Does it embrace only the amendatory order on rehearing, or does it embrace also the original decree from which neither party appealed?

Supreme Court Rule 2 (c) provides that:

"The filing of the notice of appeal with the clerk of the court whose *order,* judgment or decree is appealed from shall give the Appelalte Court jurisdiction of the *subject matter* and of the parties to the appeal, but shall nevertheless be recorded in the minutes of the court whose order, judgment or decree is appealed from." (Italics supplied.)

The phrase, "the subject matter" of the appeal, is not defined by the rule.

Supreme Court Rule 11, in so far as we are concerned with it here, provides in pargraph (a) that within ten days after filing notice of appeal, the appellant shall file with the clerk of the trial court, his assignments of error and directions to the clerk, and in paragraph (b) and (c) provides that within ten days after said service is made appellee shall file with said clerk his additional directions designating any additional portions of the record deemed essential to be included in the record on appeal and "may include cross assignments of error with his directions," etc. The rule is silent on the question as to scope of such "cross assignments of error." Whether they must be confined to the particular order or decree appealed from, or may attack the correctness of some previous order or decree from which no appeal has been taken, is a question not dealt with by the rule.

The Court in adopting these rules assumed that the meaning and scope of the terms used had already been sufficiently interpreted by the previous decisions of the Court to meet present needs, and that any further construction or application thereof to such new conditions or circumstances as might arise had best be left to the future decisions of the Court.

As regards the question of jurisdiction, the term "jurisdiction of the subject matter"—has frequently been interpreted and its meaning is pretty well understood. It means the power of the court to adjudicate the class of cases to which the particular case belongs. Lovett v. Lovett, 93 Fla. 611, 112 So. 768; State v. Hutchins, 101 Fla. 773, 135 So. 298. Of course that potential appellate jurisdiction must be lawfully invoked. Lovett v. Lovett, supra; State ex rel. v. Chapman, 145 Fla. 647, 1 So. (2nd) 278; State ex rel. v. Chillingworth, 132 Fla. 587, 181 So. 346; Brooks v. Miami Bank & Trust Co., 115 Fla. 141, 155 So. 157. The scope of the subject matter of a pending suit in equity is discussed in Switow v. Sher, 136 Fla. 284, 186 So. 519. It was held in that case that equity abhors a multiplicity of suits, and that when it has jurisdiction of the subject matter and of the parties, it may so formulate its preliminary orders and final

decree as to adjudicate and enforce the substantial rights of all the parties before the court. It necessarily follows that it can, on rehearing, amend, modify or add to its original decree in order to achieve this desirable result.

The scope of the "subject matter of an appeal" must be measured by what the appeal is from and what it brings before the appellate court for review. An appeal from an interlocutory order, now prosecuted by writ of certiorari under Rule 34, brings before the appellate court for review the question of the correctness *vel non* of the particular order appealed from in the light of the status of the case existing at the time such order was made and the scope of review is confined to matters involved in such order. Robinson v. Croker, 117 Fla. 582, 158 So. 123. The record subsequent to the entry of such order cannot be considered on such an appeal. Johnson v. Metzinger, 116 Fla. 262, 156 So. 681. However, if the final decree is also appealed from, and the appellate court, in reviewing both orders, finds that the final decree cures the errors complained of in the interlocutory order, the appeal from the latter will be dismissed as moot. Hartman v. Pool, 103 Fla. 858. See also Painter Fertilizer Co. v. Foss, 107 Fla. 464, 145 So. 253. An appeal from an order *denying* a petition for rehearing does not bring up for review the final decree after the time for appealing therefrom has expired. Fullerton v. Clark, 142 Fla. 200, 194 So. 481.

It is well settled that an appeal from a final decree, seasonably taken, is a step in the cause and opens up for consideration the entire case upon its merits, not only upon the final decree itself, but also all prior interlocutory orders connected with and leading up to the final decree, and the appellate court may consider questions not noticed at the hearing before the chancellor. See Kooman's Fla. Chan. Pldg. & Prac. section 187, and cases cited, including Hollingworth v. Arcadia Citrus Growers Association, 122 Fla. 90, 165 So. 369. So the subject matter of an appeal from a final decree is very broad indeed, and points made for the first time in the appellate court may be considered provided there is a foundation for them in the pleadings and the proof and neither party is permitted to mislead his adversary by raising objections which could have

been obviated had they been made in the court below. The broad scope of review on an appeal from a final decree necessarily follows from the statutory powers conferred upon the Supreme Court to reverse or affirm the decree, or to give such a decree as the court below ought to have given. See Kooman, section 187.

While an appeal from a final decree opens up all preceding orders for review, an appeal from a subsequent supplemental order does not bring up the final decree for review, and on such an appeal, assignments of error based on the final decree will not be considered, especiallly where the appeal from the subsequent order is taken after the time for appealing from the final decree has expired. Kooman, Sec. 187, p. 466. Thus, on appeal from an order denying a motion to set aside a sale under a final foreclosure decree, the final decree itself, which had become absolute, could not be attacked. Mann v. Jennings, 25 Fla. 730, 6 So. 771. And where a final decree is rendered and the bill retained for the purpose of adjusting by further decree certain accounts between the parties, on an appeal from a subsequent order assignments of error attacking the final decree, from which no appeal had been taken, could not be considered. Judson Lumber Co. v. Patterson, 68 Fla. 100, 66 So. 727. An appeal from a supplemental order merely carrying out the final decree does not bring such final decree before the appellate court for review. Cooperative Homestead Co. v. Dickman, 68 Fla. 462, 67 So. 140. Nor does appeal from an order confirming a sale and denying motion to vacate it bring up for review the final decree under which the sale was had, this Court being without power to review a final decree from which no appeal was taken. Ocean Frontage Co. v. McFadden, 98 Fla. 197, 123 So. 666. To like effect, see Child v. Boots 112 Fla. 277, 152 So. 212. But an appeal from a deficiency decree, rendered subsequent to a sale under final decree of foreclosure, was entertained, considered and ruled upon by this Court in Elder v. Hall, 98 Fla. 954, 124 So. 266, although no effective appeal was taken in time from the final decree. The Court held in that case the appeal from the deficiency decree, confirming sale did not bring to this Court the final decree, the time for appealing from which had expired. Here we have an in-

stance of an order, not interlocutory, nor merely supplemental in character, made subsequent to the final decree, which called for the exercise of judicial power and discretion, and an adjudication of certain rights not adjudicated in the former decree and which was final as to the distinct matter dealt with and hence appealable, even though the original final decree had become absolute and could not be brought up for review because no appeal had been taken in time.

This is somewhat in line with a principle announced in Theo Hirsch Co. v. Scott, supra, to the effect that: "An appeal may be taken upon matters arising after final appealable judgment or decree which require the judicial action of the court in relation to the rights litigated in the main suit, making necessary a substantive and important order or decree, and such order partakes of the nature of a final decision of those rights." See also Berns v. Harrison, 100 Fla. 1105, 131 So. 654; Moon v. Southern Motors Acceptance Corp., 127 Fla. 642, 173 So. 712; 2 Am. Jur. 860, et seq.

From the above cited authorities we think our conclusion that the order of June 26th, 1942, was substantive in its nature and constituted a distinct and separate adjudication of rights not dealt with in the original decree, and was therefore, in and of itself an appealable order is fully justified.

We now revert to the question as to whether on this appeal by appellant from the order of June 26th, which was favorable to appellees, the appellees have the right to file cross assignments of error directed entirely to the original decree of February 2, 1942, which was adverse to them, but from which they took no appeal.

What was the "subject matter" of this appeal from the amendatory order of June 26th, 1942? The order speaks for itself. The original decree granted the relief asked for by plaintiff. It held that plaintiff was the owner in fee simple of the property; that the deed from Home Seekers Realty Co. to defendants be vacated, annulled and removed as a cloud on plaintiff's title, which title was quieted in plaintiff, and the defendants were permanently enjoined from asserting any right in or prosecuting any suit to assert title to or obtain possession of the land described therein. The petition for re-

hearing contained fourteen grounds, the last ground being the one that was upheld in the order of June 26. If the order had merely granted a rehearing, we might be confronted with a different question, but the order shows that the court granted the rehearing on the one ground hereinabove set forth, being the 14th ground of the petition, and simultaneously granted the relief which the defendants claimed they were entitled to upon that ground—i.e., reimbursement for taxes paid by them on the land—by adding to his original decree a provision taking care of that particular matter. This was the only "modification" that was made in the final decree, and the language of the order shows that the chancellor intended that his original decree should stand, but added to it one entirely new provision based on a point of law and a contention that was argued for the first time at the hearing on the petition. The chancellor did not *expressly* deny the rehearing on all the other grounds, but his order shows that he granted the rehearing solely on the last ground, thus impliedly denying it on all others, and as the petition for rehearing had been orally argued and briefs requested by the court, as shown by the recitals in its order, the court evidently considering any further hearing unnecessary, and, in its order granting the rehearing, the court also proceeded to act, and did act and disposed of the matter as above outlined.

Our view therefore is that "the subject matter" of plaintiff's appeal from said order is the order itself; that on this appeal we cannot review the court's original final decree of February 2, 1942, and that all of appellees' cross assignments of error atacking that decree were improperly filed and must be disregarded.

The mere filing and presentation of a petition for rehearing does not operate to lengthen the time within which an appeal may be taken from a final decree. Gasque v. Ball, 71 Fla. 257, 71 So. 329. It was also held in that case that an appeal from an order *denying* a petition for rehearing, where no appeal was taken in time from the final decree, does not bring before the court for review such final decree. But in a later case it was held that a petition for rehearing duly presented suspends a self-executing final decree, which ad-

judges certain deeds to be void, until the petition is heard and determined. Reeves v. Armstrong, 75 Fla. 384, 78 So. 388. However, in the last cited case the petitioner, an order of the court, gave bond under the statute then in force, Sec. 1904 Gen. Stats. 1906, later Sec. 4957 C.G.L., which had the effect of staying all proceedings until the petition for rehearing was heard and determined. In the case of McKell v. Jackson, 107 Fla. 608, 145 So. 418, this Court held that, under Section 4958 C.G.L. an order granting a rehearing after final decree was an appealable order, whether the final decree was appealed from or not. The court held that under the cited statutory provision an order *granting* a petition for a rehearing had a different effect from an order *denying* a rehearing, which was the situation dealt with in Gasque v. Bell, supra, because Sec. 4958 C.G.L., then in effect, provided that: "After a rehearing shall have been granted, no further or other proceedings shall be had or taken on the decree pronounced on the original hearing of the cause." But Section 71 of the 1931 chancery Act, being Sec. 63.71 F. S. 1941, 63.71 F.S.A., provides that: "No petition for rehearing shall operate to stay the proceedings unless so ordered by the court. The Court in granting any such stay of proceedings may fix the terms and conditions," etc. The State Bar Association committee which drafted the 1931 Chancery Act appended a note to this Section reading as follows: "The foregoing Section is intended as a substitute for Sections 4957 and 4858 C.G.L. (3165 and 3166, R.G.S.) The purpose of the substituted Section is to prevent the use of a petition for rehearing as an automatic stay of proceedings for thirty days, which is permitted by the existing statute, and to require an order of court before any petition for rehearing shall operate as a stay." See McCarthy's Fla. Chancery Act. Anno., 165. This was doubtless the purpose of the Section of the Act, but we have held, as hereinabove noted, that where the court's decree grants no affirmative relief and is self-executing and there are no proceedings for a stay order to operate upon, there is manifestly nothing to stay, and the timely filing and presentation of a petition for rehearing under Section 70 of the same act (63.70 Fla. Statutes) suspends the final decree until

the petition is disposed of. Dade County v. Snyder, 134 Fla. 756, 184 So. 489; O'Steen v. Thomas, 146 Fla. 73, 200 So. 230.

While the timely filing of appellees' petition for rehearing may, without a stay order, have suspended the original final decree (though the injunctive clause therein renders this questionable) until the petition for rehearing was acted upon, the order on rehearing did not change or disturb the former decree, but merely added to it a new and distinct provision, favorable to appellees, and it is from this order alone that plaintiff below is appealing. It did not of course appeal from the original decree, which granted the relief plaintiff prayed for. Nor did appellees appeal from it. So the original decree, which was final in its nature, was not brought before us by the appeal from the subsequent order. We have no jurisdiction over such original decree. Therefore, we cannot consider the cross assignments of error directed to it. Burr v. Powell, 63 Fla. 379, 58 So. 29; Judson Lumber Co. v. Patterson, 68 Fla. 100, 66 So. 727; Cooperative Homestead Co. v. Dickman, 68 Fla. 462, 67 So. 410; 5 C.J.S. 153. This holding is not in conflict with Wilder v. Punta Gorda State Bank, 100 Fla. 517, 129 So. 285, wherein we held that even under the Court rule then existing, on an appeal by the losing parties from a final decree, the successful parties in the court below could have adverse rulings on pleadings and other *interlocutory matters* reviewed on such appeal by cross-assigning such rulings as error. In common law cases, at least, prior to the adoption of Rule 74 of our common law court rules, cross assignments of error could not be considered unless defendant in error sued out a cross writ of error and both the cross assignments and the cross writ had to be addressed to the same judgment or order as that to which his adversary had sued out writ of error. Wolfe v. City of Miami, 114 Fla. 238, 154 So. 196; Zigler v. Erler Cor'n., 102 Fla. 981, 136 So. 718. See generally, 4 C.J.S., 1818, et seq. But under our present rules, in equity cases, an appellee can, without taking a cross appeal, file cross assignments of error addressed to the order or decree brought up for review by his adversary's appeal.

Appellees, however, contend that this appeal from the final order or decree of June 26th necessarily had the effect

of also bringing up for appellate review the original final decree of February 2, 1942, even though the time for appealing from the latter had expired. They rely mainly upon two recent cases—DeBowes v. DeBowes, 149 Fla. 545, 7 So. (2nd) 4, and Beaty v. Inlet Beach, Inc., 149 Fla. 541, 7 So. (2nd) 1, which they claim support this contention. To this we cannot agree. The facts of the procedural situations presented to this Court in those cases clearly distinguished them from this case. In the DeBowes case, the appeal was not taken from a final order entered subsequent to a final decree, but from an amended and rewritten final decree which covered the matters dealt with in the former decree, with some modifications, which amended final decree superseded the former final decree. This final action was taken by the chancellor on rehearing after adversary argument on a recognized petition for rehearing, timely filed to the first decree, and stay order granted thereon, and the amended and rewritten final decree clearly superseded the first final decree, thus becoming the ultimate and only final decree in the case, and the one from which the appeal was properly taken. The procedural situation presented in the Beaty v. Inlet Beach case was most unusual and so utterly different from that presented in this case as to make it entirely inapplicable here. Suffice it to say, it is not in conflict with our decision in the instant case.

We come now to appellant's assignments of error on this, its appeal from the order of June 26, 1942.

Appellant's first contention is that appellees had no right to raise for the first time, on rehearing, the question of reimbursement for taxes paid by them on the land for the years 1924 to 1939 inclusive. Our view is that appellees, in spite of their failure to file a counterclaim, had sufficiently laid the predicate in the allegations of fact in their answers and in the evidence proferred by them and by the admissions secured by them from appellant's witnesses on cross examination, to have authorized the chancellor to grant this relief in the original decree, on the principle that he who seeks equity must do equity, and the mere fact that counsel for appellees overlooked the decisions applicable to the facts of the case on this point, and failed to bring them to the attention of the

court until their petition for rehearing, which raised the question, came on to be heard, would not preclude them from raising the question on rehearing, nor would it preclude the chancellor from modifying his former decree on rehearing by adding thereto the requirement that plaintiff reimburse the defendants for the taxes they had paid on the land involved, provided of course the chancellor became convinced that this was equitable and necessary in order to do complete equity between the parties. The fact that defendants paid the taxes for the years 1924 to 1939 inclusive, and that plaintiff did not, appears to be undisputed. It was really only a question of law, arising on the record, and the proper application of the law to the facts.

Under the circumstances of this case we think that it was within the broad discretion of a court of equity for the chancellor to act on this matter without requiring the filing of additional or amended pleadings. See Section 26 Fla. Chancery Act, now Section 63.26 Fla. Statutes 1941. The plaintiff below was not taken by surprise in so far as the facts were concerned which were disclosed by the record, nor was it prejudiced by the omission of the court to require the filing of new formal or amended pleadings and in so far as the question of law was concerned the chancellor heard argument on the petition for rehearing and requested counsel for both parties to prepare and file briefs thereon before he took action.

We come at last to the merits vel non of this appeal. In its assignments of error and able brief, appellant earnestly contends that the amendatory order, requiring the plaintiff to reimburse the defendants for the amount of taxes paid by them on the land involved in this suit, is erroneous. The chancellor found, and the record appears to support the finding, that the defendants had paid these taxes over a period of years, in good faith, on land which they thought they owned, and the record shows that neither plaintiff nor its predecessors had ever paid any taxes on this vacant lot.

The statute underlying the chancellor's final decree of February 2, 1942, in plaintiff's favor, now Section 695.01 Fla. Statutes, 1941, provides that: "No conveyance, transfer

or mortgage of real property, or of any interest therein, . . . shall be good and effectual in law or in equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law;" etc. The purpose of this statute is salutary, and the results also, in general. But at times its effects are harsh, and beyond the power even of a court of equity to correct or ameliorate.

So the deed to the lot in question, valid on its face, made by the Homeseekers Realty Company to the defendants back in 1925, but not recorded until 1939, was vacated and annulled and held ineffectual against the title of plaintiff, grantee of the Highway Construction Company, a creditor of the Homeseekers Realty Company which had obtained judgment, execution, sale and sheriff's deed. The 1925 deed to the defendants remained unrecorded (why, the record does not show) until long after the rights of plaintiff and its grantor had attached. Thus the court, in effect, held the deed was null and void ab initio, annulled it, and removed it as a cloud on plaintiff's title. But, had not the defendants paid these taxes during all these years, 1924-1939, not knowing, so far as the record shows, anything about their grantor's indebtedness to Highway Construction Company, the rights of plaintiff and its grantor never would have attached to this property and the title would have long since vested in the State under the Murphy Act, or in some purchaser at tax sale. Therefore, when in April 1941, plaintiff attempted to assert its title to the land by this suit, it in effect sought to receive the benefit of the money which these non-resident defendants had paid out in good faith over the years in keeping the taxes upon the land paid up—a duty to which plaintiff and its predecessors in title had neglected and made no effort to perform. And when plaintiff filed this bill to assert its title and to quiet the same as against defendants' 1925 deed, it thereby in effect took advantage of and ratified the action of defendants in thus keeping the annual taxes paid up. Therefore, in a court of equity plaintiff should be required to do equity by reimbursing the defendants for the taxes thus paid by them in good faith, and not as mere volunteers, on the strength of

their then unquestioned warranty deed, which later on plaintiff successfully sought in this suit, filed April 3, 1941, to have the court declare null and ineffectual. This requirement, as to reimbursement, under the circumstances of this case, was a just and equitable condition precedent to the granting of the relief sought by plaintiff in its bill, for the court would have declared the defendants entitled to the same relief by subrogation to the paramount lien of the taxing authority for the taxes so paid.

While the exact question presented to the chancellor, and his adjudication thereof, is one not hitherto passed on in this jurisdiction, and one upon which there is a division of judicial opinion in other jurisdictions, we have no doubt of the correctness of his action as applied to the facts of this case. The chancellor evidently thought, and with good reason, that inasmuch as plaintiffs had procured a decree nullifying a deed made in 1925 based on a purchase contract made in 1924, they should reimburse defendants for all the taxes paid by them from that date on. Both parties deraign their title from a common source. Plaintiff in its bill deraigns its title from the judgment of April 25, 1929, against defendants' grantor, Homeseekers Realty Company, and the execution, sale and sheriff's deed of December 1, 1930, based thereon, and the deed from the grantee in the sheriff's deed executed to the plaintiffs two and a half months later, February 18, 1931. So it is true that if defendants had not paid the taxes from the time they purchased the property in February of 1924 and secured deed July 17, 1925, up to the time plaintiff's grantor secured its sheriff's deed in December 1930, plaintiff's grantor would have taken the property burdened with tax liens accruing during those six years, if indeed the title had not meanwhile passed to some purchaser at tax sale or to the State. This was probably what the court below had in mind when it ordered the defendants reimbursed for *all* the taxes they had paid during the fifteen year period preceding this controversy.

While the exact question here presented has apparently not been ruled on by this Court, the underlying principle has been recognized. Thus in Prudential Inc. Co. v. Baylarian,

124 Fla. 259, 168 So. 7, we held that a junior mortgagee who has paid taxes on the mortgaged property to protect his lien will be subrogated to the paramount government lien for the amount of the taxes so paid. To like effect see Rives v. Anderson, 128 Fla. 795, 175 So. 897, and cases cited. The same rule was applied to a first mortgagee, even though the mortgage itself had become barred by the statute of non-claim, in the case of Federal Land Bank v. Brooks, 139 Fla. 506, 190 So. 737.

Appellant relies strongly upon the case of Iowa Homestead Co., v. DesMoines Nav. & RR. Co., 84 U. S. 153, 21 L. Ed. 622, wherein it was held that, while taxes on the lands in question should have been paid by defendants, who were the real owners, their neglect to do so did not authorize a party who was contesting their title to make them his debtor by stepping in and paying the taxes for them without being requested so to do. The facts of that case were quite different from those in the case at bar. In that case there was a real contest on as to title, based on two apparently conflicting federal grants. We might note also that in the opinion the court refers to taxes as a "debt" of the title holder, while with us an ad valorem tax is not a debt, in the ordinary sense of that word, for which a personal judgment against the owner lies, not being founded on contract, but is a charge imposed by legislative power upon the property, to raise revenue for public purposes, which charge is protected by a paramount lien upon such property. It is true that in the cited case the court held in general terms that ignorance of the law is no excuse, and good faith will not sustain an action where the payment has been voluntary, without any request from the true owners of the land, *and with a full knowledge of all the facts.* It is not shown in this case that defendants had any knowledge of the indebtedness of their grantor to the Highway Construction Company during the period when they bought this land and continued to pay taxes on it.

Cooley on Taxation, 4th ed., vol. 3, section 1270 is also cited by appellant. That author recognizes the division of authority on the question in the different states, and says: "In some states such a payment would not only give the party

paying a right of action against the owner of the land, but would also give him a lien upon the land for his security, at least if the payments were made under an undisputed and apparently valid conveyance. But there is no general rule to this effect, and in the absence of any statute on the subject the ruling of the Federal Supreme Court is," then stating the ruling as set forth in the preceding paragraph.

Appellant also cites McMillan v. O'Brien, (Cal.) 29 Pac. (2nd) 183, 91 A.L.R. 383, wherein it was held that one who had paid taxes on a strip of land which appeared of record to belong to an adjoining owner, in the honest but mistaken belief that the land belonged to him, was a volunteer who had no interest to protect, and was not entitled to be reimbursed therefor by the true owner. But in that case took occasion to observe that:

"It is well recognized that one who pays the debt of another in order to protect an interest of his own is not a volunteer, and is therefore entitled to subrogation. Fresno Investment Co. v. Brandon, 79 Cal. App. 387, 249 Pac. 548, cited by appellant, is merely an example of this situation. In that case plaintiff paid taxes which had been levied upon defendant's personal property, but which had been assessed against plaintiff. By section 3717 of the Political Code, 'Every tax due upon personal property is a lien upon the real property of the owner thereof,' and the assessment, therefore, became an apparent lien upon plaintiff's real property. In that case, plaintiff had an interest to protect, and, when he paid the taxes to prevent the fixing of a lien upon his real property, he was entitled to recover the taxes paid under the equitable doctrine of subrogation."

So McMillen v. O'Brien, cited by appellant, is not in point here. It is similar to the case of Jacobs, et al., v. Webster, 199 Mo. App. 604, 205 S.W. 530. In that case plaintiff paid a tax assessed to her, by mistake of the city authorities, under the belief that it was her lot, when in fact hers was an adjoining lot. Subrogation was denied on the ground that she was a volunteer. But the court said:

"An examination of the authorities holding that one is not a volunteer or a stranger, who, in ignorance of the true

facts, pays to protect his own claim, or because he believes himself to be bound, or where he believes in good faith he has an interest, will disclose that the one thus paying, and allowed to be subrogated, sustained some relation to the property to be paid on, other than that brought about by a mere mistake as to the identity of the property with which he was dealing."

Cases illustrating this distinction will be found in the annotation to McMillan v. O'Brien, supra, 91 A.L.R. 389, wherein on page 393 the case of Clark v. Knox, (Col.) 76 Pac. 372 is reviewed, which tends, with many other cited cases, to support the action of the court below in this case, though he did not expressly ground his order upon the doctrine of subrogation.

This annotation in 91 A.L.R. page 389, et seq., cites and reviews a number of cases bearing on this subject, which shows that the state courts are about equally divided, though some of them are distinguishable on the facts from the case at bar. Indeed, the majority of the cases most nearly in point appear to refute appellant's contention and to support the action of the trial court, while those holding per contra are inconsistent with our conception of justice and equity. In American Emigrant Co. v. Iowa R. Co., 52 Iowa, 323, 3 N.W. 88, the court makes an observation quite applicable here, wherein it says:

"The intervenor, being the owner in fact, it was its duty to see that the lands were properly assessed and to pay the taxes. It is not pretended any efforts were made in this direction. The intervenor, being bound to know the lands were taxable, and that the taxes were paid by someone, ordinary diligence would have developed by whom. The payments made by the defendants inured to the benefit of the intervenor."

Judgment creditors, who have, or believe they have, a lien on property and pay the taxes thereon in good faith, are entitled to an equitable lien for the amounts so paid. Such is the holding in two Washington and one Pennsylvania case cited in the Annotation in 61 A.L.R., 587, et seq. This annotation, and the annotations in 91 A.L.R. 389-393, and in 106 A.L.R., 1212-1227, give an excellent review of the decisions

bearing on this subject. A perusal of these annotations has convinced us that the weight, and perhaps the numerical strength, of the decided cases supports the position of the trial court, and our own, on the question here presented. Some of the courts found their decisions upon State statutes, and some grant relief by way of declaring an equitable lien on the property for the amount of the taxes paid, while most of the courts declare that the one so paying is entitled to be subrogated to the paramount lien of the taxing authority for the amount of the taxes so paid, with interest. This Court has in effect adopted the principle of subrogation in matters of this nature, as hereinabove pointed out. See Prudential Life Ins. Co. v. Baylarian, supra.

The Federal Supreme Court will not disturb state decisions dealing with this question, regardless of the views expressed by that Court in the Iowa Homestead Company case, supra. See Goodnow v. Litchfield, 67 Iowa, 691, 25 N.W. 882, affirmed in 123 U. S. 527, 31 L. Ed. 194, 8 S. Ct. 203. In this case the Iowa court followed a long line of its former decisions beginning with Goodnow v. Moulton, 51 Iowa 555, 2 N.W. 395.

If, as has been held in this State, and in Alabama, Mississippi, and a number of other states, a mortgagee, and even a junior mortgagee, who has paid taxes on the mortgaged property to protect his lien, is not a volunteer, and is entitled to be subrogated to the paramount governmental lien for the taxes paid, surely one who is in good faith buys land, pays a boom time price for it and receives from the owner a warranty deed, good on its face and valid between the parties, and who in like good faith believing that he is the owner, pays the annual taxes on the land for fifteen years, is likewise entitled to subrogation and reimbursement for the taxes so paid, with interest thereon, under the circumstances as disclosed by the record.

Appellee cite 25 R.C.L. 1315, and Guaranty Trust Co v. Haven, 196 N. Y. 487, 89 N.E. 1082, 25 L.R.A. N.S., 1308, and other cases cited in the annotations above referred to, as being pertinent to the applicability of the equitable doctrine of subrogation to the facts of this case. In Graish v. Kessler, 256 N.Y. 477, 177 N.E. 10, wherein the facts are quite similar

to the facts here, it was held that in a suit to set aside deeds of defendant purchaser as clouds on plaintiff's title, the defendant having in good faith and for value obtained the deeds, was entitled to reimbursement or an equitable lien for the sums expended in paying the taxes on the property in excess of the rental value. But here the land involved was a vacant lot; so there are no rents to offset against taxes paid. Among the cases supporting the action of the chancellor in this case are: Brownstin v. Brelle, 101 P. (2nd) 321, 3 Wash. (2nd) 343; Childs v. Smith, 51 Wash. 457, 99 Pac. 304; 58 Wash. 148, 107 Pac. 1053; Ebers v. Fischer, 93 Wash. 708, 131 Pac. 1128; Dolgardno v. Trumbull, 61 Wash. 659, 112 Pac. 926; Merrill v. Tobin, 92 Ia. 529, 48 N.W. 1044; Govern v. Russ, 125 Ia. 188, 100 N.W. 325; Farmers, etc. Bank v. Rushing, 175 Miss. 826, 167 So. 784; Spradling v. Hawk, 133 Kan. 545, p. (2nd) 268; Rothschild Bros. v. Rollinger, 32 Wash. 307, 73 P. 367.

The cost of those portions of the transcript which were brought up by reason of the appellees' additional directions and which were pertinent only to an attack upon the original final decree, as well as appellees' assignments of error thereto, should be assessed by the court below against appellees, but the cost of those portions of the transcript necessary to our consideration of the equity and correctness of the amendatory order appealed from should be assessed by the trial court against the appellant. See Rule 24.

For the reasons above pointed out, the decretal order appealed from, rendered June 26, 1942, is hereby affirmed, and the cause remanded for such further proceedings as may be necessary to secure the proper enforcement of said order.

Affirmed.

BUFORD, C. J., THOMAS and SEBRING, JJ., concur.