PRINCESS VLADIMIR ERISTAVITCHITCHERINE, formerly LUCY
COTTON THOMAS MAGRAW, and PRINCE VLADIMIR ERIS-
TAVITCHITCHERINE, her husband, and BISCAYNE ISLAND
CORPORATION, a Florida corporation, v. MIAMI BEACH FED-
ERAL SAVINGS AND LOAN ASSOCIATION, a United States
corporation, SAM KAY, B. W. SLOTE, GEORGE KOPELMAN,
SAUL A. WEINGARTEN, DANIEL J. CRANE and ANTOINETTE
CRANE, his wife, ELSIE A. RUBACK, a single woman, NETTIE
W. HOLLANDER joined by her husband, M. HOLLANDER,
ETHEL DUBINSKY and J. DUBINSKY, her husband, HERSCHEL
A. AUXIER, HARRY SPEIR and HELEN F. SPEIR, his wife,
REID De JARNETTE and Mrs. REID De JARNETTE, his wife,
MAXWELL HUMAN, also known as MAXWELL HYMAN and
BEATRICE S. HYMAN, his wife, SLOTE HOMES CORPORA-
TION, and U. S. INVESTMENTS CO.

16 So. (2nd) 730           January Term, 1944
February 18, 1944           Division B

*Bart A. Riley, A. C. Dressler, Riley & Dressler* and *J. Lewis Hall,* for appellants.

*Patton & Kanner, McKay, Dixon & DeJarnette* and *Meyer, Davis & Weiss,* for appellees.

BROWN, J.:

This is a mortgage foreclosure case. It involved the foreclosure of a mortgage on 35 lots on Biscayne Island, one of the islands along the Venetian Causeway and within the City limits of Miami. Thirty four of the lots were vacant lots and one was improved with a handsome residential structure. The amount of the mortgage was $70,000. Final decree of foreclosure was rendered and entered on February 12, 1943. The final decree ordered the special master to sell

the property at the south front door of the Court House at Miami, within the legal hours of sale, on Monday, April 5, 1943, the property to be sold to the highest and best bidder for cash. The decree also ordered the special master to give notice of such sale by publishing such notice "in the Miami Review and Daily Record, a newspaper of general circulation published in Dade Couty, Florida, for at least one insertion to be made prior to the date of sale."

There was no petition filed for a rehearing within the twenty day period, nor at any other time for that matter. Nor was any appeal taken from such final decree until May 25, 1943, at which time appeals were also taken from several orders made by the Court subsequent to the final decree. Thus as to the final decree, the appeal came too late, the 60 day period having expired. See Section 67.03 F.S. 1941. We are without jurisdiction to review it.

Notice of sale was published by the master on March 29, 1943, one week prior to the date of sale, as designated in the final decree.

On April 2, 1943, three days before the sale date, appellants filed a petition praying the court to postpone the sale and order the special master to re-advertise the property for public sale on the rule day in May, 1943, and to give notice of the time and place of sale by publication once each week for four consecutive weeks. It was alleged in the petition that while there is no statute in this state fixing the time of notice of sale in mortgage foreclosure cases, the time as fixed in the final decree did not provide for a reasonable notice of such sale and was not in accordance with the practice and custom of the circuit courts of Florida, or of the Circuit Court for the 11th Judicial Circuit. That at the time the decree was signed, petitioners and their attorney of record believed that the mortgaged property would be refinanced on March 17, 1943, but that on that date, and up to the present time, defendants have not been able to·refinance the property. It also alleged that the mortgaged property was worth upward of $200,000; that the notice as published was not a reasonable public notice, was prejudicial to the interests of the petitioners, and prayed that the court order the special

master to readvertise the property for sale on the Rule Day in ·May, 1943, and to give notice of the time and place by publication once each week for four consecutive weeks. The petition was sworn to by two of the appellants.

This petition for postponement came on to be heard before the circuit judge at 9:30 A.M. on April 5, 1943, the morning of the day on which the sale was to be had, and the same was denied, a formal order to that effect being entered on the following day.

One of the appellees filed a motion on the morning of April 5, 1943, stating in effect that if the property were sold in separate parcels it would probably bring a greater sum than if sold as one unit, and prayed that the master be directed to sell the same in separate parcels, which motion was granted on the same day and before the sale was had on that day.

On April 9, 1943, the special master filed his report of sale, giving the numbers of the lots and the names of the highest bidders for each lot, the total sales amounting to $82,575.

On April 14, 1943, the defendants appellants here, filed exceptions to the master's report of sale and objections to its confirmation by the court which embraced the same grounds, among others, contained in the petition hereinabove referred to, and alleged that the value of the property at the time of the sale was in excess of $200,000, and that if a notice of sale had been given once a week for four weeks the public would have been better advised of the sale of such valuable property. It is also alleged that the attorney for defendants who had handled the cause up until the final decree had, through ignorance or mistake, permitted the property to be sold under the terms of the final decree, and that defendants had not authorized said attorney to agree to a decree containing a direction for only one insertion of an advertisement of notice of sale and that in so doing he had aided in depriving the defendants of their legal rights to due process. It is also alleged that the price received for the property was wholly inadequate and that upon the taking of testimony by the court as to the value of the property the court should be

convinced that said sale price was wholly inadequate, so as to shock the conscience of the court. The petition also alleged that petitioners had employed additional counsel on March 31, 1943, to represent their interest and prayed the court to order the special master not to hold the sale of the mortgaged property on Monday, April 5, 1943, but that he re-advertise the property for public sale on the Rule Day in May, 1943, and give notice thereof by publication once each week for four consecutive weeks; also that the property be sold in parcels of one lot each in the event said sale by parcels should not be sufficient to pay the amount of the final decree and costs the master to be ordered to offer the mortgaged property in its entirety, and accept the highest aggregate sum bid under either of said two sales. This motion was sworn to by the president of the Biscayne Island Corporation, which corporation was one of the defendants in the court below. On the same date that the above motion was filed a motion was also filed asking that the court appoint a master to take testimony showing the basis of that part of his report, reading as follows: "that for some time prior to the day of said sale one or more persons interested in giving the matter of said sale the greatest possible publicity caused various notices and advertisements, regarding said Special Master's Sale, to be published on several occasions in the Miami Herald; and judging from the unusual number of persons who attended and bid at said sale, said last mentioned notices and advertisement accomplished the desired purpose."

Certain interrogatories were also propounded to the master as to who placed the advertisements, referred to, the date when published, and whether or not the master had them published, etc; also that the defendant be permitted to examine the buyers of the property at the master's sale and to call realtors to testify as to the value of the property sold.

On April 17, 1943, the court entered an order confirming the special master's report, excepting however from said report lots 37 and 38, and holding that the special master had conducted the sale in accordance with the final decree, and except as to lots 37 and 38, authorizing him to execute and deliver a special master's deed to each of the respective

purchasers at the sale, giving a list of the purchasers and the amounts of their bids, and authorized and directed the master to make disbursements and payments of the proceeds from the master's sale under the terms of the final decree and to make a report thereof to the court. The master's final report showed compliance with this order, and attached clippings showing the various advertisements referred to in his first report, one of which was a "display ad," which carried a picture of the handsome residence located on one of the lots.

On April 19, 1943, the court entered an order denying the exceptions to the special master's report of sale, and the motion to take testimony, hereinabove referred to. This order of April 19, 1943, denied the exceptions to the master's report of sale and the motion to take testimony *nunc pro tunc* as of April 17, 1943, being the date on which these matters were heard and orally denied by the court.

On May 25, 1943, notice of appeal was filed to each of the orders of the circuit court hereinabove referred to, and also to the final decree of February 12, 1943.

It thus appears that the foreclosure sale was conducted strictly in accordance with the final decree, which latter was not attacked by petition for rehearing or by timely appeal. The final decree is certainly not void on its face, and not being reviewable here for mere error, if any, except on appeal taken within the time allowed by law, we must regard it as final and absolute. Furthermore, the various successful bidders for cash, to whom master's deeds were executed in accordance with the court's final decree and subsequent order of confirmation, have not been made parties to this appeal, nor were they parties to this litigation in the court below. See Garvin v. Watkins, 29 Fla. 151, 10 So. 818; Platt v. City of Punta Gorda, 98 Fla. 1242, 125 So. 381; Miami Bank & Trust Co. v. The Rademacher Co. 149 Fla. 24, 5 So. (2nd) 63, and cases cited.

The assignments of error and the contentions of counsel for appellants in their brief are based upon the insufficiency of the notice prescribed in the final decree and the inadequacy of the price at which the property was sold by the special

master after publishing notice of the sale as provided for in the final decree.

As above indicated, we are without jurisdiction to review the final decree in the respect pointed out, i.e., the alleged insufficiency of the notice provided for therein. It is well settled that after the lapse of time within which an appeal from a final decree should have been taken as required by statute, an attempted appeal, though correct as to form, will not confer jurisdiction upon this appellate court to review such decree, and such attempted appeal is subject to dismissal on motion, or by the court *sua sponte*. Hodges v. Moore, 46 Fla. 598, 35 So. 13; Griffith v. Henderson, 52 Fla. 507, 42 So. 705; Buck v. All Parties, etc., 86 Fla. 86, 97 So. 313; Ocean Frontage Company v. McFadden, 98 Fla. 197, 123 So. 666; Bartlett & Sons Company v. Pan-American Studios, 144 Fla. 631, 198 So. 195; Edwards v. Edwards, 144 Fla. 374, 198 So. 14. Nor does the filing of briefs to the merits by an appellee, as here, cure the defect, as the parties cannot confer, by waiver or consent, jurisdiction of the subject matter where such jurisdiction does not legally exist.

In the recent case of Hollywood Inc. v. Clark, 153 Fla. 501, 15 So. (2nd) 175, this court said:

"While an appeal from a final decree opens up all preceding orders for review, an appeal from a subsequent supplemental order does not bring up the final decree for review, and on such an appeal, assignments of error based on the final decree will not be considered, especially where the appeal from the subsequent order is taken after the time for appealing from the final decree has expired. Kooman, par. 187, p. 466. Thus, on an appeal from an order denying a motion to set aside a sale under a final foreclosure decree, the final decree itself, which had become absolute, could not be attacked. Mann v. Jennings, 25 Fla. 730, 6 So. 771. And where a final decree is rendered and the bill retained for the purpose of adjusting by further decree certain accounts between the parties, on an appeal from a subsequent order asignments of error attacking the final decree, from which no appeal had been taken, could not be considered. Judson Lumber Corp. v. Patterson, 68 Fla. 100, 66 So. 727. An

appeal from a supplemental order merely carrying out the final decree does not bring such final decree before the appellate court for review. Co-operative Homestead Co. v. Dickman, 68 Fla. 462, 67 So. 140. Nor does appeal from an order confirming a sale and denying motion to vacate it bring up for review the final decree under which the sale was had, this Court being without power to review a final decree from which no appeal was taken. Ocean Frontage Co. v. McFadden, 98 Fla. 197, 123 So. 666. To like effect, see Childs v. Boots, 112 Fla. 277, 152 So. 212."

This leaves for consideration the question of the alleged inadequacy of price. The general rule is that inadequacy of price alone is not sufficient to set aside a judicial sale. Of course where inadequacy is connected with or shown to result from any mistake, accident, surprise, fraud, misconduct or irregularity upon the part of the purchaser or other party connected with the sale, which has worked injustice to the party complaining and which was unknown to him at the time the sale was confirmed, the sale will generally be set aside. See Ruff v. Guaranty Title & Trust Co., 99 Fla. 197, 126 So. 383. In that case it was said:

'This Court, in Mitchell v. Mason, 75 Fla. 679, text 684, 79 So. R. 163, held that an order confirming a sale under a foreclosure decree is equivalent to an adjudication that the sale was one proper to be approved, and creates a presumption of the regularity of the proceedings. With that rule in force, the burden was on the appellant to overcome the presumption by a proper showing and yet the only ground for the petition that has even remotely any support in the affidavits accompanying it is the one that states that the amount offered for the property was grossly inadequate. It is not made to appear by either of the affidavits that the person making the same was ready, able and willing to give more for the property than the amount for which it was sold."

See also Waybright v. Turner, 129 Fla. 310, 176 So. 424; Crichlow v. Equitable Life Assurance Society, 131 Fla. 752, 180 So. 382; McCann v. City of St. Petersburg, 145 Fla. 158, 199 So. 264.

It follows that, even if the orders made by the chancellor

subsequent to the final decree are properly before us for review, we could not hold them to be erroneous. While appellees have not raised the question, it is extremely doubtful that orders of this nature should or could be brought before this court for review by appeal. At least, the more appropriate method of invoking appellate review of orders such as these is that provided by our recently adopted Supreme Court Rule 34. This rule provides that all appeals from interlocutory orders and decrees, as authorized by statute, *"including orders or decrees after final decree,"* shall be prosecuted to this court by certiorari "in the manner" provided by the rules relating to the constitutional writ of certiorari.

Prior to the enactment of Chapter 521 of the Laws of 1852, which was brought forward into the revised statutes of 1892 as Section 1457, and afterwards incorporated in Compiled General Laws of 1927 as Section 4961, an appeal to this court could not be taken from an interlocutory order, or from an order made subsequent to final decree, but could only be taken from a final decree. See Jacksonville, M. & P. Ry. and Nav. Co. v. Broughton, 38 Fla. 139, 20 So. 829; Camp Phosphate Co. v. Anderson, 48 Fla. 226, 37 So. 722. The Act of 1852 referred to provided, for the first time in this State, for appeals from interlocutory orders or decrees of the circuit courts when sitting as courts of equity, but made no provision for appeals from supplemental orders made subsequent to the entry of the final decree. Chapter 13870, Acts of 1929, empowered the Supreme Court to prescribe by Court Rule appellate practice and procedure and further provided that upon the promulgation of any such rule, any statute in conflict therewith would be suspended. Section 67.02, Florida Statutes of 1941 reads in part as follows:

"67.02. *Appeals from interlocutory orders, etc.*—Appeals may be taken and prosecuted from any interlocutory order, decision, judgment or decree of the circuits courts of this State, when sitting as courts of equity, provided however, that the Supreme Court of this State may by court rule provide for review of all such orders, decisions, judgments and decrees through proceedings in, or in the nature of, certiorari and upon the adoption of any such court rule this

section, insofar as it provides for review by appeal, shall stand suspended during the existence of such court rule."

It thus appears that prior to the adoption of our present Supreme Court Rule 34, there was no provision, by statute or rule, for appellate review of mere supplemental orders subsequent to final decree, unless the final decree itself was seasonably appealed from and the subsequent orders could be considered as in effect a mere supplement to or dependent upon the final decree. Now, under said rule, orders made subsequent to a final decree are subject to review by rule-certiorari, even in cases where the final decree itself cannot be reviewed because the time for taking an appeal therefrom had expired. This is an important addition to our system of appellate procedure and review. However, prior to the adoption of this rule this court had adopted the view that an appeal might be taken from an order or decree made subsequent to a final decree where such order required judicial action and adjudicated new and substantive questions and settled substantial rights between the parties which were not disposed of in the original final decree, although the judicial action thus taken might have some relation to rights which had been litigated and adjudicated by the final decree in the main suit. In other words, that an appeal might be taken from an important order or decree of this nature entered subsequent to the main final decree, when such order or decree partakes of the nature of a distinct and final decision of rights not theretofore adjudicated by the final decree. See Theo Hirsch Company v. Scott, 87 Fla. 336, 100 So. 157; Berns v. Harrison, 100 Fla. 1105, 131 So. 654; Moon v. Southern Motors Acceptance Corp., 127 Fla. 642, 173 So. 712. And in the recent case of Hollywood Inc. v. Clark, 15 So. (2) 175, 153 Fla. 501, we held that an appeal was properly taken from an amendatory order made on rehearing which was not a mere supplemental order but added a paragraph to the final decree which made a final and distinct adjudication of rights which had not been, but which could have been, adjudicated in the original decree, and which, as to the distinct matters adjudicated, was so final in its nature as to give it the character of a final decree. Perhaps counsel for

appellants in the case at bar thought that the orders made by the chancellor subsequent to the final decree were reviewable by appeal under the above cited authorities. However, our view is that these orders were made pursuant to and in connection with the mere enforcement of the final decree and were more properly reviewable under Supreme Court Rule 34 by a proceeding in the nature of certiorari. But as the Rule is comparatively recent and the procedural questions somewhat novel, we will *ex mero motu* treat these appeals from said orders as applications for certiorari.

We have held that Rule 34 did not abrogate the provisions of Section 4961 C.G.L. with reference to appeals from interlocutory orders, but prescribed a process whereby interlocutory orders could be brought to the Supreme Court for review and disposed of in a more expeditious manner than that provided by the statute; that while the common law writ of certiorari, which the Constitution authorizes this court to issue, is not available as a substitute for an appeal or writ of error, such interlocutory appeals are by the statute made a matter of right, and that only the *method* of the exercise of that right is changed by Rule 34, which also gives a method for reviewing orders and decrees made subsequent to the main final decree. See Burkhart v. Burkhart, 141 Fla. 450, 193 So. 434; Greater Miami Development Corp. v. Pender, 142 Fla. 390, 194 So. 867; Hollywood Inc. v. Clark, 15 So. (2) 171, 153 Fla. 501.

For the reasons above pointed out, the appeal from the final decree must be and is hereby dismissed; and as to the orders made subsequent to the final decree and from which appeals were taken as hereinabove noted, which we have treated as applications for certiorari, no reversible error having been made to appear, certiorari is denied, and said orders are therefore, in legal effect, affirmed.

BUFORD, C. J., THOMAS and SEBRING, JJ., concur.