KATHLEEN MABSON AND HUSBAND, H. B. MABSON, *Appellants*, v. HERMAN CHRIST, *Appellee.*

Division A.

Opinion filed December 11, 1928.

*Palmer, Dickenson, Shurley & Lake,* for Appellants;

*Don Register,* for Appellee.

## STATEMENT

BROWN, J.—On August 13, 1926, Herman Christ, appellee, filed his bill for mortgage foreclosure against appellants, Kathleen Mabson and H. B. Mabson. On November 1, 1926, a decree *pro confesso* was entered, and on December 16th following, an order of reference made to a special master who took the testimony and filed his report two days later. Final decree was rendered December 27, 1926. This decree found the mortgage debt to be $6,006.66, and allowed $650.00 as solicitor's fee, and ordered foreclosure sale on default of payment within a limited time and

directed how the proceeds of sale should be applied. There was in the bill a prayer for a deficiency decree in case the property should sell for less than the ascertained debt, but this matter was not mentioned in the final decree of foreclosure. On April 20, 1927, master's report of sale was filed, showing that the property had sold for $2,000.00, which, after paying the attorney's fee and other expenses of sale, left $1,284.45 in the master's hands to be applied on the mortgage debt. Upon the same date, decree of confirmation of sale was rendered, and deed to purchaser directed. On September 21, 1927, a deficiency decree was rendered against H. B. Mabson, one of the defendants, for the sum of $2,722.21 with interest, though the total deficiency was ascertained in the decree to be $4,722.21 with interest from date of sale. This decree recited that: The matter came on for hearing upon complainant's motion for a deficiency decree, on August 5, A. D. 1927, after notice to solicitor for complainant and to solicitors for H. B. Mabson, defendant, and that, after argument by counsel for complainant and for said defendant, the Court found the equities on said matter to be with the complainant, and after ascertaining the amount of the deficiency, decreed that the complainant "do have and recover of and from the said defendant, H. B. Mabson, the sum of $2,722.21, with interest thereon at 8 percent per annum from December 16, 1926, to the time of payment, and that execution issue therefor." From this decree appeal was duly taken.

BROWN, J. (After stating the facts as above.):

Although the bill prayed for a deficiency decree, none was provided for either in the final decree or the decree of confirmation. Thus this particular prayer in the bill was, in effect, impliedly denied. The decree as against the appellants was based upon a decree *pro confesso* and therefore

by lapse of time had become absolute under Rule 45 of
our Equity Rules and Sec. 3158 Rev. Gen. Stats. It could
not be changed, added to nor taken from, except as to cor-
rection *nunc pro tunc* of mere clerical errors or misprisions,
without resorting to the recognized processes of equity
based upon appropriate grounds. It has been well said that
there must be some point in every court proceeding when
the cause is finally disposed of, its thread cut, and the par-
ties out of court, unless brought in again by some new pro-
cess served upon them. The public welfare demands that
there shall be some definite end to litigation—a point some-
time, somewhere, when every case is terminated. We can-
not afford to return to the interminable and outrageous
practice similar to that depicted in Dicken's case of Jarn-
dyce v. Jarndyce. Especially is this true where as with us
a court of equity has no stated terms but is regarded as
always open. This point of finality is reached with us,
under both the statute and Rule 45, twenty days after final
decree, when the final decree is based upon decree *pro con-
fesso;* and, under the statute and Rule 90, when the time
for rehearing has expired, as to decrees in general. See
Secs. 3158, and 3164, Rev. Gen. Stats. Under the English
practice the decree was final when enrolled. 21 C. J. 706-
707. In this case, months after redition of the final and
confirmation decrees, neither of which contained any
reservation holding the case open for the purpose, a defi-
ciency decree was rendered on motion of complainant with
notice to the solicitor of one of the appellants, which notice
is shown merely by the recitals in the deficiency decree, and
thus a personal judgment rendered against the defendant,
without new process, although the right of the complainants
to such deficiency decree was not adjudicated nor held open
for subsequent disposition in either the final or the confir-
mation decree. It is true the final decree had as an incident

to the foreclosure, adjudicated the existence, validity and amount of the debt, and provided for foreclosure sale and the application of the proceeds to the debt and for the return of the surplus proceeds, if any, to the debtors. But no more. The right to a deficiency decree was not adjudicated. Originally, under equity practice, no deficiency decrees were granted. They, and the right to them, are the creatures of statute or rules of court. And their rendition is not compulsory in Florida. The court can adjudicate the right and grant the remedy, or not, as it sees fit in the exercise of its sound discretion. The primary purpose of a bill in equity to foreclose a mortgage is now, as from the beginning, to subject the security to the payment of the debt secured. If the adjudication of this matter of a deficiency decree, which is but incidental to the main purpose, be omitted from the final decree and decree of confirmation, it cannot, after the decree has become absolute, on mere motion, be supplied by a new and additional decree at any subsequent time the complainant may choose to ask for it.

It is not enough to say in answer to this that a court of equity possesses, as a necessary incident, the power to enforce its decrees, even if it has to change the manner of doing it. 21 C. J., 692-693. Of course it has that power, within proper limitations, but it possesses no power to go back and grant a new right or impose a new duty not adjudicated in its former decrees after they have become final and absolute, as was done here. Witness the language of the deficiency decree: ''Upon consideration of said motion, * * * the court finds that the equities in said matter are with the complainant, Herman Christ, and that the said Herman Christ is entitled to a deficiency decree in said cause.'' Then follows the finding as to the full amount then due on the debt after crediting the amount realized from the foreclosure sale, the adjudication of the amount

of the deficiency which the complainant was entitled to as against defendant, H. B. Mabson, and decree for its recovery and the issuance of execution therefor as against H. B. Mabson, he being the only defendant to whom notice of the motion for deficiency decree appears to have been given. The amount decreed was Two Thousand Dollars less than the ascertained balance of $4700.00. This decree also differed from the final decree rendered some eight months previously, in that such final decree adjudicated the indebtedness, about $6000.00, to be due by the two defendants jointly, while the deficiency was found and decreed against only one—the husband.

While a court of equity retains the power to modify by subsequent order the time or manner of the enforcement of a final decree after the expiration of the term in which it was rendered, or after it has become final and absolute under our rules, it does not retain the power to amend, modify or alter the principles of such final decree. 21 C. J. 699, 706, 693; 5 Encyc. Pldg. and Pract., 1057-1058, 1049; Morgan v. Jones, 52 Fla., 543, 42 So. R. 242.

In foreclosure proceedings, while the decree adjudging the equities and ordering a sale of the property on default of payment is the final decree in the cause, yet the subsequent decree of confirmation might be considered as a continuation of the final decree, as it is certainly an essential step in its enforcement. Fla. Fertilizer Mfg. Co. v. Hodge, 64 Fla. 275, 60 So. R., 127; Fla. Chancery Jurisprudence, 344, and cases cited; Sexton v. Harper (Ala.) 104, So. R. 802. It consummates the proceedings; is the apprpriate place to provide the deficiency judgment if one is desired and granted; and after the time provided in the rules for opening decrees, rehearing, etc., has expired, the adjudication of rights in the case is at an end. If a party desires a deficiency decree, he should not only pray for it in his bill,

but should apply for it and obtain it before the case has ended by final decree and decree of confirmation and not wait until after the expiration of the time within which such decrees may be opened on motion or a rehearing granted under our rules and statutes.

"Where plaintiffs, in a suit to foreclose a mortgage, entered a decree containing no provision for a deficiency judgment, and bought the property on the foreclosure sale, they are not entitled, after defendant's time to file exceptions to the decision and to appeal from the judgment has expired, to amend such judgment *nunc pro tunc* by inserting a provision making defendant liable for any deficiency." 42 C. J. 299.

A decree which merely finds the amount due, orders its payment by the defendant personally liable, and provides that in default of such payment the land shall be sold and the proceeds applied in satisfaction of such amount, is not a personal judgment such as will support a creditor's bill, or authorize a general execution. 42 C. J. 298.

So in this case there was no personal judgment given or authorized in the original or confirmation decree. That was added months later, by the deficiency decree. Both under the statute, Chapter 11993, Laws of 1927, and Rule 89 of Equity Practice, this act involved the exercise of judicial discretion. It was a new adjudication of rights in the case, long after the case had terminated. It was unauthorized and erroneous, was not within the scope of proper amendments of former decrees *nunc pro tunc*, and should be reversed with instructions that such deficiency decree be vacated and annulled.

And it is so ordered.

ELLIS, C. J., AND STRUM, J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion and judgment.