154 So.2d 846 (1963)
B.P. GALLOWAY, Appellant,
v.
D.L. MUSGRAVE and Jackson Grain Company, a Florida corporation, Appellees.
No. 3206.
District Court of Appeal of Florida. Second District.
June 19, 1963.
*848 Harry M. Hobbs, Tampa, for appellant.
Baynard, McLeod & Overton, St. Petersburg, for appellee D.L. Musgrave.
Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellee Jackson Grain Co.
CARROLL, CHARLES, Associate Judge.
This is an appeal from a final decree in a chattel mortgage foreclosure suit, and from a subsequent deficiency decree.
The appellant B.P. Galloway purchased 460 head of cattle from appellee D.L. Musgrave, for $161,000. The unpaid portion of the purchase price, amounting to $119,000, was secured by a chattel mortgage which encumbered 610 head of cattle, being those involved in the sale and an added 150 head. The First National Bank in St. Petersburg held a mortgage from Galloway and his wife on 354 head of cattle. The appellee Jackson Grain Company had a mortgage from Galloway and wife on 320 head of cattle, inferior to the bank's mortgage.
Musgrave sued to foreclose his mortgage, and joined Galloway and Jackson Grain Company as defendants. He alleged defaults through the depletion of the herd (by disease and sales) and nonpayment of installments of principal and interest. Galloway defended, claiming fraud and failure of consideration for which he sought affirmative relief.
The bank also sued to foreclose its mortgage, joining as defendants Galloway and his wife and the Jackson Grain Company. During the pendency of that suit, Musgrave acquired the bank's mortgage. The two foreclosure suits were consolidated.
In his complaint Musgrave prayed for foreclosure sale and for a deficiency decree, and he also prayed for judgment for the amount which should be found due on the mortgage indebtedness. Predicated on his prayer for a money judgment, Musgrave obtained issuance of a writ of garnishment against Hood's Milk, Inc., indebted to Galloway for milk purchases. A motion by Galloway asserting impropriety of the garnishment was granted, and the chancellor dissolved the writ. Also, during pendency of the suit and prior to final hearing, the plaintiff Musgrave moved for possession of the mortgaged livestock on the ground that the mortgagor was making unauthorized sales thereof.[1] The chancellor granted the motion, and the plaintiff mortgagee was placed in possession of 206 head of mortgaged cattle consisting of 134 from the herd of 460 originally purchased, and 72 of the cattle which had been encumbered by the bank's mortgage.
On final hearing the chancellor entered a comprehensive final decree. It was found that the mortgagor was in default on certain payments and had made unauthorized *849 sales of cattle covered by the mortgage; that there was due to the plaintiff $111,000 principal, plus interest from April 8, 1961, attorney fees and costs, secured by a lien on the cattle remaining; that the cost of maintaining the cattle which had come into possession of the mortgagee under § 699.09, Fla. Stat., F.S.A., had exceeded the income therefrom; and it was ordered that if the amounts due were not paid within a short time specified, the 134 head of cattle should be sold to satisfy the indebtedness. The counterclaim of the defendant Galloway was denied. Jurisdiction was reserved in the final decree in the following language:
"9. This Court retains jurisdiction of this cause to settle all other questions that this Court has jurisdiction to settle under the Complaint and which the proceedings herein had not settled by this or previous Decrees or Orders in this cause, as the Court shall deem proper in equity and as the circumstances of this case may require."
Foreclosure sale was held pursuant to the decree, and the cattle were bought in by the plaintiff Musgrave for $95,000, resulting in a deficiency sum of $24,671.99. A petition for rehearing directed to the final decree was heard and denied. Plaintiff moved for a deficiency decree, and such decree was entered for the full amount of the deficiency.
In seeking reversal the appellant presents five points. The first is a contention that the repossession by the mortgagee of part of the mortgaged cattle was an election of remedies which barred him from suing to foreclose and from seeking a deficiency decree. That contention lacks merit. The statute (Ch. 699, Fla. Stat., F.S.A.) gave the mortgagee the right to possession when the mortgagor sold certain of the cattle without his written permission. The section of the statute under which the mortgagee took possession (quoted in footnote No. 1) places restrictions on the mortgagor and grants rights to the mortgagee in event of violation. The first part of § 699.09 prohibits a mortgagor of livestock or one holding under him from removing mortgaged stock from the county or selling it without written consent of the mortgagee. The second portion or half of the section provides that on violation thereof the mortgagee may take possession of the mortgaged livestock, accelerate the mortgage indebtedness and enforce "all of his rights and remedies for the payment and collection of such mortgage and of the obligation thereby secured." (which would include foreclosure and deficiency decree).
In this case possession of cattle was taken by the mortgagee during pendency of his foreclosure suit, pursuant to an order in that cause based on a motion of the mortgagee invoking § 699.09. On final hearing such action was confirmed by a finding in the decree that unauthorized sales of cattle had been made by the mortgagor. After taking possession of the cattle the mortgagee did not sell them apart from foreclosure.[2] The repossessed cattle were held, as appears to have been intended by the statute, subject to disposition of the court, and were sold pursuant to the final decree of foreclosure, for a substantial *850 amount which was applied in partial satisfaction of the decree.[3]
Secondly, appellant contends that the chancellor erred in cancelling the garnishment bond and releasing the principal and surety thereunder. The garnishment writ was dissolved during the pendency of the suit. In the final decree the court "discharged" the bond and released the principal and surety. However, in a subsequent order denying petition for rehearing the chancellor amended and clarified that provision of the final decree by stating it was not the intention of the court to pass upon liability on the bond for matters prior to dissolution of the writ, or to release the principal and surety thereon except as to future liability.
Thirdly, appellant argues the court was in error in not requiring a full and complete accounting from the mortgagee as to expenses and profits incident to his possession of a portion of the cattle which were encumbered. That was sufficiently answered by the appellee by showing that such accounting is reflected in the companion case, Fla.App., 154 So.2d 852, which is here on appeal, to which appellant is a party. Moreover, as pointed out by appellee, the chancellor required accountings from time to time, which were received without question or objection. Milk produced while a portion of the herd was in possession of the mortgagee was sold to Hood's Milk, Inc. The full consideration called for with benefit of the milk base was not paid to the mortgagee, and distribution of the part withheld by Hood's Milk, Inc., was the concern of the court in the companion case. And, as previously stated, the chancellor determined that the mortgagee's expenses of maintaining the herd exceeded the amounts received, and such finding has not been shown to be erroneous or unsupported on the record.
A fourth point made by the appellant presents the argument that the court was without jurisdiction to enter the deficiency decree because of the lapse of time between the final decree and the application for deficiency. Appellant cites a number of cases for the proposition that a deficiency may not be applied for after the decree becomes final. See Mabson v. Christ, 96 Fla. 756, 119 So. 131; Atwell v. Atwell, 111 Fla. 352, 149 So. 555; Cole v. Heidt, 124 Fla. 264, 168 So. 11; Jappe v. Heller, Fla. 1953, 65 So.2d 302; Scheuermann v. Shamas, Fla. 1957, 97 So.2d 314; Katz v. Koolish, Fla. App. 1962, 142 So.2d 759. In the cases relied on by the appellant the decrees had not reserved jurisdiction.
Where jurisdiction is sufficiently reserved in a final decree of foreclosure, a deficiency decree may be applied for and entered after a lapse of time following the decree, which, but for the reservation, would operate to deprive the court of jurisdiction to entertain such motion and make a deficiency decree. United American Ins. Co. v. Oak, 123 Fla. 159, 166 So. 547; Colmes v. Hoco, Inc., Fla.App. 1963, 152 So.2d 524. See also, Cole v. Heidt, supra; Katz v. Koolish, supra. Here there was an interval of almost six months between the final decree and the deficiency decree. The sale was held November 14, reported November 20, and title certified December 5, 1961. Deficiency decree was granted April 24, 1962. However, jurisdiction was sufficiently reserved in the final decree to permit the entry of the deficiency decree after such interval of time, on the authority of the cases last cited. Although the decree did not expressly reserve jurisdiction to grant a deficiency decree, the reservation was broad enough to include that relief, since it covered jurisdiction "to settle all other questions that this court has jurisdiction *851 to settle under the complaint[4] * * as the court shall deem proper in equity and as the circumstances of this case may require."
In point five the appellant contends the motion for deficiency decree should have been denied because of the wrongful garnishment and because the parties were contesting over certain income from the herd in another suit.
The discretion to grant deficiency decrees in mortgage foreclosure suits, provided for by statute (§ 702.06, Fla. Stat., F.S.A.), is not absolute and unbridled but is a "sound judicial discretion" requiring support of established equitable principles. Carlson v. Becker, Fla. 1950, 45 So.2d 116. The exercise of such discretion in denial of a deficiency decree must be supported by disclosed equitable considerations which constitute sound and sufficient reasons for such action. Scheneman v. Barnett, Fla. 1951, 53 So.2d 641; Kissling v. McCarthy, Fla.App. 1958, 100 So.2d 434.
The matters presented by appellant as equitable considerations were not such as should compel denial of deficiency decree. For any damages to which the appellant might be entitled for wrongful garnishment, resort could be had to the garnishment bond. We fail to see how the outcome of such a damage claim on its merits could bear on the granting or denial of a deficiency decree. The other reason urged by appellant, regarding monies from the herd which are involved in a separate suit, has reference to a suit to determine disposition of the milk base and of distribution accordingly of part of the price for milk which was withheld, pending decision as to the milk base, by a purchaser of milk from the mortgagee while in possession of the herd during the pendency of this suit. The argument of appellant, as we understand it, is that when the separate suit is concluded, the mortgagee may become entitled to additional monies, making it inequitable to grant a deficiency decree for the amount of the deficiency as established in this suit. While that argument is not without substance, it is not such as to require reversal of the deficiency decree as an abuse of discretion. This consideration submitted by the appellant would appear to have application only to the amount of a deficiency, and not to the granting or denial thereof. The chancellor properly entered the deficiency decree for the amount established in this cause. If, as a result of the separate suit, the mortgagee recovers other net revenue from his operation of the herd, the appellant may be protected by crediting such added receipts against the deficiency decree.
We have considered the arguments of the appellee on his cross-assignments of error, and find them to be without merit. Prior to trial of this cause, the chancellor struck from the pleadings the matters with reference to the milk base. On cross-assignments the appellee seeks a determination here of the merits of his contentions on the issues stricken, though noting that such issues are the subject of litigation between the parties in a separate suit. Under the circumstances, the chancellor did not abuse his discretion in relegating the parties to trial of the issues relating to the milk base in the separate suit in which they were involved.
For the reasons stated the decree and order appealed from are affirmed.
Affirmed.
KANNER, Acting C.J., and ALLEN, J., concur.
NOTES
[1] That motion was made under § 699.09, Fla. Stat., F.S.A., which provides as follows:

"No person who shall give or execute any mortgage on livestock nor any person who shall buy, hold, possess or acquire or have any interest or lien in such livestock subordinate or inferior to any mortgages thereon shall remove or permit the removal of said livestock from the county, or otherwise sell or dispose of the same, without the written consent of the mortgagee; and in case of any violation of the provisions of this section the obligation secured by such mortgage shall at the option of holder of such mortgage become immediately due and the mortgagee shall have the right to enforce forthwith all of his rights and remedies for the payment and collection of such mortgage and of the obligation thereby secured, whether at such time by its terms due and payable or not, and the mortgagee shall be entitled to take immediate possession of such mortgaged livestock."
[2] Another section of Chapter 699 relating to livestock mortgages, § 699.02, Fla. Stat., F.S.A., makes provision for sale of mortgaged livestock by the mortgagee, upon default, without foreclosure, where such remedy is expressly contracted for in the mortgage instrument. That section was not invoked by the mortgagee, nor could it have been, because of the absence of such a provision in the mortgage. For the same reason the case of Intertype Corporation v. Pulver, 101 Fla. 1176, 1180, 132 So. 830, 135 So. 793, relied on by the appellant is not applicable here because the holding in that case that repossession of property under a chattel mortgage was an election of remedy inconsistent with foreclosure, was predicated on express provisions in the mortgage which gave the mortgagee alternative remedies of foreclosure or of taking possession and selling the property without foreclosure.
[3] The right of possession conferred on the mortgagee by § 699.09, Fla. Stat., F.S.A., and its exercise was analogous to the procedure whereby possession of mortgaged personal property is authorized to be taken for the benefit of a mortgagee, by an attachment in aid of foreclosure under § 76.07, Fla. Stat., F.S.A.
[4] The complaint contained a prayer for a deficiency decree as follows:

"6. Should a deficiency occur upon the sale of the said mortgaged property, plaintiff be granted a decree therefor against defendant."